**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant,**

v.

**Patricia CONFER, Appellee.**

No. 04–97–00062–CV.

Court of Appeals of Texas, San Antonio.

Nov. 26, 1997.

Rehearing Overruled Dec. 16, 1997.

---

Gary A. Scarzafava, Annelie Menke, Scarzafava, Smith, Menke & Suchma, P.L.L.C., Houston, for Appellant.

Brent A. Biggs, Lane, Gannon & Taliaferro, L.L.P., San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

ANGELINI, Justice.

Appellant, St. Paul Fire & Marine Insurance Company, appeals a jury verdict in favor of appellee, Patricia Confer, in this workers' compensation death benefits case. In four points of error, St. Paul contends (1) that the evidence is both legally and factually insufficient to support the jury's verdict; (2) that the trial court erred in refusing to admit evidence offered by St. Paul at trial; and (3) that the trial court's order awarding attorney's fees to Patricia Confer should be set aside. The pivotal issue in this case is whether Ronald Confer was in the course and scope of his employment when he was involved in a fatal automobile accident. We find that he was and affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Ronald Confer worked at the Texas Educational Foundation (TEF) in San Marcos, Texas. He lived in San Antonio, Texas, south of Loop 1604 off of Highway 281 near the Brookhollow exit. Dr. Confer's normal route of travel from his work to his home was Interstate 35 South from San Marcos, west on Loop 1604, south on Highway 281, until he exited at Brookhollow. He normally left work at approximately 4:30 p.m. and arrived home at approximately 5:30 p.m.

On March 15, 1994, at approximately 4:00 p.m., Dr. Confer left his office in San Marcos. He left work early so that he could travel to Altex Electronics, a computer supply store in San Antonio, to pick up diskette cleaners that were needed at his office and still arrive home at his regular time. Altex is located on Interstate 35, past the Loop 1604 exit. Therefore, in order to travel to Altex, it would have been necessary for Dr. Confer to deviate from his normal route home. At approximately 4:20 p.m., before Dr. Confer reached the Loop 1604 exit, his car careened off the road and struck another car which was parked on the right shoulder of the road. Dr. Confer's car then flipped over and traveled back into the highway where it was hit by oncoming traffic. Dr. Confer died in the accident.

Dr. Confer's widow, Patricia Confer, sought workers' compensation benefits for the death of Dr. Confer, alleging that, at the time of his death, he was acting in furtherance of the affairs of his employer because he was on his way to purchase computer supplies for use at his office. The case was initially heard by the Texas Workers' Compensation Commission at a contested case hearing. The hearing examiner determined that Dr. Confer was, in fact, in the course and scope of his employment at the time of the accident because he would not have been on the road at the time the accident occurred had he not left his office early in order to pick up computer supplies for his employer. A Texas Workers' Compensation Appeals Panel reversed the hearing examiner's decision, finding that Dr. Confer's fatal trip had two purposes: (1) to pick up computer supplies and (2) to go home. The panel noted that the accident occurred before Dr. Confer had made any deviation from his normal route home. Therefore, the appeals panel determined that Mrs. Confer's claim was not compensable because Dr. Confer was not in the course and scope of his employment as contemplated by the Texas Labor Code when the accident occurred.

Mrs. Confer filed suit in district court to set aside the decision of the appeals panel. The case was tried to a jury, which determined that Dr. Confer was in the course and scope of his employment at the time of the accident. The trial court entered judgment awarding Mrs. Confer death benefits and attorney's fees under the Workers' Compensation Act.

## ARGUMENT AND AUTHORITY

### A. Sufficiency of the Evidence

In its first and second points of error, St. Paul contends that the evidence is

both legally and factually insufficient to support the jury's finding that Dr. Confer was in the course and scope of his employment at the time of his fatal accident. In considering a legal insufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 459 (Tex. 1992); *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987). In considering a factual sufficiency point, we must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, we are not fact finders, we do not pass upon the credibility of witnesses, nor do we substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■■■ Workers' compensation benefits are recoverable only where the death or injury in question occurs in the course and scope of the employee's employment. *Deatherage v. International Ins. Co.,* 615 S.W.2d 181, 182 (Tex.1981). Generally, an injury which occurs in the use of public streets or highways in going to and returning from the place of employment is not compensable because such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with the work or business of the employer. *Evans v. Illinois Employers Ins. of Wausau,* 790 S.W.2d 302, 304 (Tex.1990); *Texas Gen. Indem. Co. v. Bottom,* 365 S.W.2d 350, 353 (Tex.1963).

■■■ Section 401.011(12)(B) of the Texas Labor Code addresses situations in which an employee is injured while traveling for both personal and business reasons. *See* TEX.

LAB.CODE ANN. § 401.011(12)(B) (Vernon 1996). This is known as the "dual purpose rule." The rule provides that injuries incurred during travel for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment unless (1) the trip to the place of the accident would have been made even had there been no personal or private affairs of the employee to be furthered by the trip, and (2) the trip would not have been made had there been no affairs or business of the employer to be furthered by the trip. *Id.; Janak v. Texas Employers' Ins. Assoc.,* 381 S.W.2d 176, 179 (Tex.1964). In order to be entitled to workers' compensation benefits in dual purpose situations, the employee or his survivors must satisfy both prongs of the dual purpose rule. *Janak,* 381 S.W.2d at 180; *Tramel v. State Farm Fire & Cas. Co.,* 830 S.W.2d 754, 756 (Tex.App.—Fort Worth 1992, writ denied).

The evidence presented to the jury in this case consists of the following: Patricia Confer testified that her husband always arrived home at 5:30 p.m. and that, in order to do so, he left his office at 4:30 p.m. If he was going to be late, he always phoned her to let her know. Dr. Confer rarely arrived home early. On March 14, 1994, Mrs. Confer was ill. She spoke with her husband several times throughout the day regarding her condition. She called Dr. Confer at his office to let him know that her family doctor had referred her to a specialist. Dr. Confer asked Mrs. Confer if she wanted him to come home to take her to her appointment with the specialist, but she declined. Mrs. Confer never asked Dr. Confer to come home early on March 14, 1994, and he never told her that he would. Mrs. Confer returned home from her doctor's appointment at approximately 4:30 p.m. after having been told that she would need to check into the hospital for observation. When she arrived home, she retrieved an answering machine message from Dr. Confer informing her that he would be home at his normal time. The message was left at approximately 3:50 p.m.

Given the answering machine message indicating that Dr. Confer planned to be home

by 5:30 p.m., Mrs. Confer testified that Dr. Confer could not have intended to leave his office at 4:00 p.m., go to Altex to pick up diskette cleaners, and return to his office. Clearly, he intended to go by Altex and then go home. Accordingly, Mrs. Confer testified that the purpose of Dr. Confer's travel at the time of the accident was "in part" to come home.

Dr. Confer was Jack Keebler's immediate supervisor at TEF. Keebler testified that on March 14, 1994, he and Dr. Confer discussed their need for diskette cleaners for use in an upcoming proposal on which they planned to be working. At 4:00 p.m., Dr. Confer told Keebler that he was going to Altex to pick up some diskette cleaners and then go home. Keebler testified that Dr. Confer was very ethical about his time, and always worked an entire day. Keebler testified that, based upon Dr. Confer's usual route home, he would have been at the point where the accident occurred whether he was traveling to Altex or to his home.

Carl Anderson was Dr. Confer's immediate supervisor at TEF. Anderson testified that he did not instruct Dr. Confer to go to Altex, but that Dr. Confer had the authority to pick up needed supplies without approval. Anderson testified that Dr. Confer was a professional and did not account to Anderson for his time. Accordingly, Dr. Confer would not have asked permission to leave early in order to pick up company supplies or to go home. Anderson admitted that, if Altex had been located in the direction opposite of Dr. Confer's home and Dr. Confer had left work at 4:00 p.m. in order to pick up diskette cleaners, Dr. Confer would have been on company time until he was on the road to his home. However, because the road to Altex and the road to Dr. Confer's home was the same, Anderson could not say that Dr. Confer was on company time when the accident occurred.

Robert Estes was driving the car that ultimately hit Dr. Confer's car in the accident. Estes testified that there was heavy traffic and it was raining when the accident occurred. He stated that Dr. Confer was not speeding when he veered off the road. Finally, Deann White, Dr. Confer's secretary,

testified at trial that Dr. Confer left the office early on March 14, 1994, but that he did not tell her why. White testified that Dr. Confer had told her earlier in the day that his wife was ill and that he might be receiving an emergency phone call. White believed that Dr. Confer had implied that he would leave early that day so that he could take care of his wife.

In the present case, St. Paul contends that all the evidence points to the fact that the sole purpose of Dr. Confer's trip on March 14, 1994, was to go home from work. St. Paul implies that Dr. Confer left work early because his wife was ill and he wanted to give himself enough time to get home on time in the rain. In the alternative, St. Paul contends that, if the dual purpose doctrine is implicated by the facts of this case, there is no evidence that the trip would not have been made had there been no business of TEF to be furthered by the travel. Thus, according to St. Paul, both prongs of the dual purpose rule have not been satisfied by the evidence. It is without question that the evidence supports a finding that Dr. Confer intended to go to Altex to pick up diskette cleaners on his way home. He clearly told Jack Keebler that he was going to Altex before he went home; and, he left early while telling his wife he would be home at the normal time. Therefore, because the evidence demonstrates that Dr. Confer was both on an errand for his employer and on his way home at the time the accident occurred, the dual purpose rule is implicated. The question now becomes, whether the evidence adduced at trial meets the two requirements of the dual purpose rule. This determination was a fact question for the jury.

St. Paul relies on *Tramel v. State Farm Fire & Cas. Co.,* in support of its assertion that Mrs. Confer failed to prove that Dr. Confer would not have been traveling if the business purpose of his trip had not existed. In *Tramel,* the claimant regularly traveled from her home to the bank on behalf of her employer before going to work on Thursday mornings. On the Thursday morning in question, the claimant was involved in an accident at a point in her route that was common to both her trip to the bank and her

trip to work if she was not going to the bank. The court granted summary judgment in favor of the insurance carrier, holding that because the accident occurred at a point in the route where she would have traveled regardless of whether she was going to the bank or to work, she would have made the trip along this route even if there had been no business of her employer to carry out. *Tramel*, 830 S.W.2d at 757. *Tramel* is factually distinguishable from the present case because the claimant in *Tramel* was traveling to work when the accident occurred. In other words, because she had not begun her business errand at the time of the accident, the claimant's work day had not begun.

The same is true in *Evans v. Illinois Employers Ins. of Wausau*, where the supreme court held that the employee's death was not compensable where he was involved in an accident on the way to a pre-work safety meeting. The court held that because the claimant had not "begun work," he was not on company business. *Evans*, 790 S.W.2d at 305. The result would be different in a situation in which the accident occurs after an employee has completed the errand for the employer and is then en route to work. In that case, the employee has begun work, so to speak. *See Meyer v. Western Fire Ins. Co.*, 425 S.W.2d 628, 629 (Tex.1968) (holding injury compensable where employee was involved in accident on way to work after having taken work-related telephone calls from home); *Janak*, 381 S.W.2d at 182 (holding injury compensable where accident occurred on way to work *after* employee had deviated from his normal route in order to pick up ice for use during work).

The foregoing case law seems to indicate that the controlling issue in cases such as this is during what segment of a trip did the injury occur; the segments being home to business errand and business errand to work. These segments are reversed in the present case. In other words, Dr. Confer's fatal trip consisted of segments including work to business errand and business errand to home. Applying the logic of the cases discussed above, an injury occurring between work and the business errand would be compensable because the employee has not completed work, while an injury occurring between the business errand and home would not be compensable because the employee's work would be finished.

In this case, Dr. Confer was going to Altex for his employer at the time the accident occurred. The evidence indicates that Dr. Confer did not normally leave work early, and that he did so on this occasion so that he could complete his business errand and still be home at his normal time. Accordingly, the evidence supports a finding that Dr. Confer would not have been on Interstate 35 at 4:20 p.m. if he had not been going to Altex. The fact that Altex happens to be along the same route as his route home should be of little consequence. Why should the result be any different if Altex had been located somewhere off of Interstate 35, forcing Dr. Confer to travel away from his regular route? The controlling issue should be whether the employee is traveling on behalf of his employer *at the time* of the accident, not on what road he happens to be traveling. The trial judge properly reflected this logic when he stated, in ruling on St. Paul's motion for directed verdict, "I think you'd be entitled to judgment as a matter of law if he had gotten to Altex ... at this juncture it's a fact question." The jury answered this fact question in the affirmative, finding that Dr. Confer was in the course and scope of his employment at the time he was killed. The verdict is supported by the evidence presented at trial. St. Paul's first and second points of error are overruled.

## B. Exclusion of Evidence

■ In its third point of error, St. Paul contends that the trial court erred in refusing to admit into evidence the testimony of Jack Keebler taken at the Texas Workers' Compensation Commission contested case hearing in this action. The excluded evidence consists of one question and answer contained in the contested case hearing transcript:

QUESTION: All right. So as far as you know [Dr. Confer] was going to accomplish two purposes by leaving when he did; Number one, he was going to Altex and, Number two, he was going home?

ANSWER: Uh-huh. That was my understanding, yes.

St. Paul argues that a contested case hearing is an evidentiary proceeding with sworn testimony, and is, therefore, admissible at trial. The Texas Labor Code does provide that the Workers' Compensation Commission's record is admissible at trial, but states that such admissibility is limited to the extent allowed under the Texas Rules of Civil Evidence. *See* TEX. LAB.CODE ANN. § 410.306(b). Accordingly, the commission's record is not absolutely admissible.

In this case, the trial court excluded Keebler's contested case hearing testimony because it did not comply with Rule 804 of the Texas Rules of Civil Evidence. The admission or exclusion of evidence is in the sound discretion of the trial court. *In Interest of D.L.B*, 943 S.W.2d 175, 178 (Tex. App.—San Antonio 1997, no writ). We review a trial court's evidentiary decisions by an abuse of discretion standard. *Jackson v. Van Winkle*, 660 S.W.2d 807, 810 (Tex.1983); *General Resources Organization, Inc. v. Deadman*, 907 S.W.2d 22, 29 (Tex.App.—San Antonio 1995), *writ denied*, 932 S.W.2d 485 (Tex.1996). The appellant has the burden to show that, in addition to being erroneous, the trial court's ruling was calculated to cause and probably did cause the rendition of an improper judgment. *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989); TEX.R.APP. P. 81(b)(1). Reversible error does not usually occur in connection with an evidentiary ruling unless the whole case turns on the evidence admitted or excluded. *General Resources*, 907 S.W.2d at 29.

Rule 804(b) of the Texas Rules of Civil Evidence provides that testimony given at another hearing of the same proceeding is admissible as an exception to the rule against hearsay *only if the declarant is unavailable as a witness.* TEX.R. CIV. EVID. 804(b) (emphasis added). The trial court found in this case that St. Paul failed to prove the unavailability of Jack Keebler when it offered his contested case hearing testimony into evidence. Therefore, St. Paul failed to overcome Mrs. Confer's hearsay objection. Indeed, St. Paul failed to address Jack Keebler's availability at all. As such, the trial court did not abuse its discretion in refusing to admit Keebler's contested case hearing testimony.

Moreover, even if the trial court did err in excluding Keebler's contested case hearing testimony, the error was rendered harmless when Keebler offered virtually identical testimony through his deposition which was read at trial. In his deposition, Keebler testified that Dr. Confer left the office to go to Altex "to pick up some diskette cleaners and then head on home." Therefore, Keebler's trial testimony conveyed to the jury substantially the same information that his contested case hearing testimony would have conveyed if it had been admitted. The exclusion of evidence is harmless if it is cumulative of other evidence that was admitted on the same issue. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Pitman v. Lightfoot*, 937 S.W.2d 496, 518 (Tex.App.—San Antonio 1996, writ denied); *see also* TEX.R. CIV. EVID. 403. St. Paul's third point of error is overruled.

### C. Attorney's Fees

In its fourth point of error, St. Paul contends that the award of attorney's fees to Mrs. Confer's attorneys should be set aside. The Texas Labor Code provides that an attorney's fees in a workers' compensation case shall be paid from the claimant's recovery. TEX. LAB.CODE ANN. § 408.221 (Vernon 1996). St. Paul argues that the trial court's judgment in this case does not specifically state that the attorney's fees are to be paid from Mrs. Confer's recovery of death benefits. However, our review of the judgment reveals that it specifically provides that Mrs. Confer's attorneys shall be paid out of her weekly benefits according to Texas Labor Code § 408.221. Therefore, St. Paul's argument is wholly without merit. St. Paul's fourth point of error is overruled.

The judgment of the trial court is affirmed.