# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-06-00529-CV

**American Protection Insurance Company, Appellant**

**v.**

**Liana Leordeanu, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-04-001199, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I withdraw my previous dissenting opinion and substitute the following opinion on rehearing. Liana Leordeanu was a pharmaceutical sales representative injured in an accident while driving from a business dinner to a storage unit to unload and reorganize the sales materials in her company car. This case hinges on a single issue: Was Leordeanu in the course and scope of her employment at the time of her injury? The jury answered the question in the affirmative. Because there is ample evidence to support the jury's finding, and the evidence is legally and factually sufficient, I would affirm the judgment.

Workers' compensation benefits are recoverable only where the death or injury in question occurs in the course and scope of the employee's employment. *Deatherage v. International*

*Ins. Co.*, 615 S.W.2d 181, 182 (Tex. 1981). "'Course and scope of employment' means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." Tex. Lab. Code Ann. § 401.011(12) (West 2006). This statutory term includes activities "conducted on the premises of the employer *or at other locations*." *Id.* (emphasis added). Work that is directed or authorized by the employer is within the course of employment regardless of whether the work benefits the employer's business. *Burkett v. Welborn*, 42 S.W.3d 282, 287-88 (Tex. App.—Texarkana 2001, no pet.). An injury "arises out of" employment if it would not have occurred if the conditions and obligations of employment had not placed the claimant in harm's way. *Texas Workers' Comp. Ins. Fund v. Simon*, 980 S.W.2d 730, 735-36 (Tex. App.—San Antonio 1998, no pet.).

It is well settled that courts should construe the Workers' Compensation Act to carry out the legislature's evident purpose of compensating injured workers and their dependents. *Texas Workers' Compensation Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 652 (Tex. 2004); *Ackerson v. Claredon Nat. Ins. Co.*, 160 S.W.3d 273, 275 (Tex. App.—Austin 2005, pet. denied). Its provisions "should not be hedged about with a strict construction but should be given a liberal construction to carry out its evident purpose." *Lujan v. Houston Gen. Ins. Co.*, 756 S.W.2d. 295, 297 (Tex. 1998) (quoting *Yeldell v. Holiday Hills Ret. & Nursing Ctr., Inc.*, 701 S.W.2d 243, 245 (Tex.1985)).

With regard to traveling salespersons like Leordeanu, Texas has adopted the "continuous coverage principle." *See Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292-93

2

(Tex. 1985); *Aetna Cas. & Sur. Co. v. Orgon*, 721 S.W.2d 572, 574-75 (Tex. App.—Austin 1986, writ ref'd n.r.e.). As explained by Professor Larson and adopted by this Court in *Orgon*:

> Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct depart[ure] on a personal errand is shown.

*Orgon*, 721 S.W.2d at 574-75 (quoting 1A A. Larson, Workmen's Compensation Law § 25.00 (1985)). This Court recognized in *Orgon* that the "'continuous coverage principle' is the prevailing view throughout the United States." *See id.* (citing cases). Under this principle, Leordeanu's injury would be compensable because there was no evidence of a distinct departure on a personal errand at the time of her injury. *See id.*

The majority begins its analysis from the vantage point of another well-established rule: Ordinarily an employee is not within the course and scope of his employment when he is injured going to and coming from work. Tex. Lab. Code Ann. § 401.011(12)(A); *Evans v. Illinois Employers Ins.*, 790 S.W.2d 302, 304 (Tex. 1990); *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963). The rationale for this rule is that such injuries do not arise out of a person's employment, but are suffered as a consequence of the risk to which all traveling persons are exposed. *Evans*, 790 at S.W.2d at 304. But this is not a "coming and going" case; it is a traveling salesperson case. *See Shelton*, 389 S.W.2d at 292-93 (recognizing distinction between "going to or returning from" case and cases involving traveling salesmen). As a traveling salesperson without a fixed place of employment, the risk to Leordeanu was inherent in the employment itself. *See United States Fid. & Guar. Co. v. Lowry*, 231 S.W. 818, 823 (Tex. Civ. App.—Austin 1921, no writ). An injury is

3

deemed to arise out of employment if the conditions of employment put the claimant at a greater risk of injury by virtue of his travel. The neutral risk of an automobile accident is causally related to employment if it involves an employee whose duties increase his exposure to such a hazard. "The problem in each case is to determine whether the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *Shelton*, 398 S.W.2d at 292.

Moreover, even if we viewed this as a "coming and going" case, there are some exceptions to this general rule. Transportation to and from the place of employment may be in the course and scope of employment if the transportation is furnished as part of the contract of employment or is paid for by the employer. Tex. Lab. Code Ann. § 401.011(12)(A)(i); *Bottom*, 365 S.W.2d at 353-54; *see also Poole v. Westchester Fire Ins. Co.*, 830 S.W.2d 183, 185-87 (Tex. App.—San Antonio 1992, writ denied) (issue of fact as to whether sales manager on way to work in company car with logo fell within exception to general commute rule). The key issue in determining whether compensation is available for an injury incurred while traveling to or from work under this exception is whether the employer's furnishing or paying for the transportation was an integral part of the employment contract or merely an accommodation to the employee. In the former case, the injury is within the course of employment and is compensable; in the latter, it is not. *See Rose v. Odiorne*, 795 S.W.2d 210, 214-15 (Tex. App.—Austin 1990, writ denied) (oil rig employee entitled to compensation if employer's transportation plan was essential for transporting employees to remote job site, benefitted employer, and was needed to operate rig). There is no

4

dispute that Leordeanu's employer furnished and/or paid for Leordeanu's transportation. Thus, as a matter of law, this exception applies and renders Leordeanu's injury compensable under the statute.

The majority, however, rejects application of the "continuous coverage principle" and the employer provided transportation exception in labor code section 401.011(12)(A)(i) in favor of an analysis under labor code section 401.011(12)(B).[1]  Known as the "dual purpose rule," section 401.011(12)(B) of the labor code addresses situations in which an employee is injured while traveling for both personal and business reasons. Tex. Lab. Code Ann. § 401.011(12)(B). The rule provides that injuries incurred during travel for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment unless (1) the trip to the place of the accident would have been made even had there been no personal or private affairs of the employee to be furthered by the trip, and (2) the trip would not have been made had there been no affairs or business of the employer to be furthered by the trip. *Id.*; *Janak v. Texas Employers' Ins. Ass'n*, 381 S.W.2d 176, 180-81 (Tex. 1964); *Wausau*

---

[1]  The majority suggests that it is improper to address the application of the "continuous coverage principle" because the appellee raises this argument for the first time in this Court on rehearing. *See American Prot. Ins. Co. v. Leordeanu*, ___ S.W.3d ___, ___ n.8, No. 03-06-00529-CV, slip op. at 15 n.8 (Tex. App.—Austin Feb. 13, 2009). While the majority is correct that an appellate court will not generally consider arguments raised for the first time on rehearing, an exception exists when an appellee fails to advance an argument because he is attempting to preserve the judgment of a lower court. *Chesshir v. First State Bank of Morton, Tex.*, 620 S.W.2d 101, 101-02 (Tex. 1981) (per curiam); *Estate of Lindburg v. Mount Pleasant Indep. Sch. Dist.*, 746 S.W.2d 257, 260 (Tex. App.—Texarkana 1988, no writ). In this case, Leordeanu received a favorable judgment below and, therefore, had no duty to complain in the trial court, much less raise an alternative theory of recovery on appeal. *See Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).

*Underwriters Ins. Co. v. Potter*, 807 S.W.2d 419, 422-23 (Tex. App.—Beaumont 1991, writ denied). Texas courts have held that to be entitled to workers' compensation benefits in dual purpose situations, the employee or his survivors must satisfy both prongs of the dual purpose rule. *Janak*, 381 S.W.2d at 180; *Tramel v. State Farm Fire & Cas. Co.*, 830 S.W.2d 754, 756 (Tex. App.—Fort Worth 1992, writ denied).

Citing to *Evans* that an employee's trip from "work to home" was "purely personal" and to *Tramel* "noting that an employee's trip from home to work serves 'private, personal purpose[s],'" the majority concludes that Leordeanu's travel from the restaurant on the night in question was for both business and personal purposes, and that she did not satisfy both prongs of the dual purpose test. Although arguing that "this is a simple case involving a single issue," American Protection variously urges that (i) unless the motivating purpose for the travel to the place of occurrence of the accident is a work purpose, travel in service of a personal purpose is not covered under the Act, (ii) travel from work to home is inherently personal, and (iii) the work must be the primary reason for the travel, without which reason, the trip would not have occurred. American Protection acknowledges that Leordeanu submitted sufficient evidence to prove a business reason for the trip, but asserts that unless she "can show that she would have not returned to home on the evening of her accident," she is not entitled to recovery under the Act.

We will sustain no-evidence points of error only if the record shows (1) a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence bar the appellate court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite

6

of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810-11 (Tex. 2005). We must view the evidence in the light most favorable to the verdict, crediting favorable evidence where reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 827. The final test for legal sufficiency must always be whether the evidence at trial would allow reasonable and fair-minded people to reach the verdict under review. *Id.* "It is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Soto v. Seven Seventeen HBE Corp.*, 52 S.W.3d 201, 209-10 (Tex. App.—Houston [14th Dist.] 2000, no. pet.) (quoting *Osterberg v. Peca*, 12 S.W.2d 31, 55 (Tex. 2000)).

The trial court rejected American Protection's motion for summary judgment asserting that the dual purpose rule barred Leordeanu's claim for benefits "because there has been no evidence offered that Ms. Leordeanu would not have gone home (that she would have abandoned the trip home) absent a business reason for going to the [storage unit] . . . ." As the trial court correctly recognized in denying summary judgment, the disputed question as to whether Leordeanu was acting within the course and scope of employment was a question for the jury.

The evidence showed that, as a traveling pharmaceutical sales representative, Leordeanu marketed pharmaceutical products to pharmacies and approximately 400 doctors in a designated territory that included Austin, Bastrop, La Grange, New Braunfels, and San Marcos. According to her testimony, Leordeanu often hosted physicians and their staffs at work-related events at local restaurants. Her job description included calling on doctors, hosting events, and marketing to doctors, pharmacies and their staffs. Each sales call was reported to the company and

7

the job contemplated extensive administrative tasks, including documenting each contact, distributing and accounting for manufacturers' samples, and submitting expense reports. To accomplish these administrative tasks, Leordeanu maintained a home office in her apartment.

American Protection adduced testimony from a representative of the employer that Leordeanu's place of employment was her home and that the company did not maintain an office in the State of Texas. Leordeanu converted an extra room into her home office where she maintained office equipment, including a computer, printer, and facsimile machine—all paid for and maintained by the company. She also maintained sales materials and manuals in her home office. Another sales representative testified that each sales representative has a similar setup. Leordeanu did her extensive paperwork in her home office. She sometimes did paperwork at night and on the weekend. The company also provided Leordeanu with a company vehicle for which it paid for business-related gas and repair expenses.

Each sales representative also had the option of maintaining a storage area in his home for which he was paid a monthly stipend or maintaining a separate storage unit off site which was paid for by the company. Leordeanu opted to maintain a storage unit in a nearby storage facility that was temperature controlled. She stored samples and marketing materials and kept no personal items in the storage unit. The storage unit was on the road to her home. She would go to her storage unit frequently, "twice a day," "quite a few times," often on weekends. A representative of her employer testified that it was at her discretion when to go to the storage unit.

On the day of the accident, Leordeanu completed a sales call at a doctor's office in Bastrop and then drove to La Feria Restaurant in Austin to host a dinner for medical personnel. It

8

is undisputed that the event at the La Feria Restaurant was hosted by the company and was a company event. It was a "standard" event for a customer. Approximately ten employees and the doctor from the clinic attended. The sales representatives often hosted similar events each week that were considered part of their work.

Leordeanu testified that on the evening of the accident, after the restaurant event, she was going first to her storage unit to unload and organize her car and was then headed home to complete an "hour, hour and a half of paperwork, to enter the calls for the day." Although Leordeanu was a well-regarded employee, she had received an unfavorable report for her administrative "paperwork" tasks. Thus, she testified that she had a "serious deadline" that night because she was going out of town and needed to put her paperwork in the mail the next day so it would be received by her district manager on time: "I had to put that stuff in the mail to him that Friday. It had to be done." She recognized her performance on administrative tasks was "not where it should be," and that she had a deadline she had to meet.

After dinner, Leordeanu traveled from South Austin via Loop 360, a major artery, intending to exit at F.M. 2222. The route to the storage unit was also in the direction of her home. Before she reached the storage unit, and while she was still on Loop 360, Leordeanu suffered serious injuries in a car accident.

If facts raise the dual purpose doctrine for injury incurred during travel, the jury—as it was here—must be instructed as to the dual purpose rule.[2] *Wausau Underwriters*, 807 S.W.2d at

---

[2] Where evidence of dual purposes existed and the court did not include a charge, it was reversed. *See, e.g.*, *Wausau Underwriters Ins. Co. v. Potter*, 807 S.W.2d 419, 422-23 (Tex. App.—Beaumont 1991, writ denied). Despite the fact that this case may not raise the issue

422-23; *Texas Workers' Comp. Ins. Fund v. Bridwell*, No. 14-02-00643-CV, 2003 Tex. App. LEXIS 9443 at *6-7 (Tex. App.—Houston [14th Dist.] Nov. 6, 2003, no pet.) (mem. op., not designated for publication); *Argonaut Sw. Ins. Co. v. Brewer*, No. 09-93-005-CV, 1994 WL 312909 at *4 (Tex. App.—Beaumont June 30, 1994, writ denied) (mem. op., not designated for publication). As the trial judge correctly recognized, the determination of whether the evidence adduced at trial establishes that an employee was in the course and scope of employment is a fact question for the jury. The jury answered this fact question in a general verdict, finding that Leordeanu was in the course and scope of her employment at the time she was injured. American Protection did not challenge the instruction, and the instruction is consistent with this Court's analyses of the dual purpose rule as it applies in the context of the course and scope of employment. Nor is it disputed that the court's instruction to the jury provided an accurate statement of the law. If American Protection had desired findings other than the general verdict, it could have posed separate questions to the jury. *See* Tex. R. Civ. P. 278. It did not. The disputed question was whether the plaintiff was acting within the course and scope of employment; this was a question for the jury to which the parties sought a general verdict.

Just as driving in a company car festooned with a company logo does not necessarily bring the employee within coverage of the Act, neither does the fact that the employee will eventually end up at home at the close of day exclude him from coverage. If an employee is injured while running an errand for the employer either on the way to work or on the way home from work, the controlling issue remains whether the employee was in the course and scope of his employment.

---

of dual purpose travel and require such a charge, the cautious trial court gave one.

One court reasoned that the inquiry requires the fact finder to determine during which segment of the trip the injury occurred—the segment between the errand and work or the segment between the errand and home. *St. Paul Fire & Marine Ins. Co. v. Confer*, 956 S.W.2d 825, 830 (Tex. App.—San Antonio 1997, pet. denied). In its well-reasoned analysis of a case similar to this one, the San Antonio court of appeals upheld a jury verdict that an employee was in the course and scope of his employment when he had an accident that occurred while he was driving to a store for office supplies after which he would have driven home. *Id.* As in this case, in *Confer*, the route home coincided with the route to the business errand. The majority does not distinguish *Confer*, but finds that it "departs" from the statute.

The court in *Confer* parsed a difficult statute concluding that the "controlling issue should be whether the employee is traveling on behalf of his employer *at the time* of the accident, not on what road he happens to be traveling." *Id*. at 830. The court reasoned that the fact that the office supply store happened to be along the same route as the employee's route home "should be of little consequence." *Id*. at 829. Both Confer and Leordeanu were traveling on major highway arteries—Confer on Interstate Highway 35 and Leordeanu on Loop 360. As the *Confer* court correctly asked: "Why should the result be any different if [the office supply company] had been located somewhere off of Interstate 35, forcing Dr. Confer to travel away from his regular route?" There is no language in the statute suggesting that the legislature intended such a random factor to inform its statutory scheme. Nor can one assume that the fact that Leordeanu organized her sales travels and chores to eventually end up at home just off of Loop 360 would automatically exclude her from coverage. But this is not even a *Confer* case. This is a traveling sales representative case.

11

By the majority's reasoning, Leordeanu was on a dual purpose trip that would exclude her from coverage when she left the doctor's office in Bastrop for the business dinner in Austin. Even though she was traveling from one business errand to another, and was clearly in the course and scope of employment, she was also traveling the same route that she would have to traverse to return to her home in Austin later that night even in the absence of a business purpose. Under the majority's erroneous application of the statute, this trip would be no different than her trip from the restaurant to the storage unit. Both the storage unit and restaurant were mere stops on a trip that would ultimately take her home. The issue is not whether she would end up at home at the end of her workday—most workers do. The issue is whether she was in the course and scope of her employment at the time of her accident.

The majority's reading makes it impossible for the statute to achieve its legislative purpose by extirpating its provisions for persons without a fixed workplace. The coming and going rule originates from the proposition that an injury occurring while using the public streets or highways in commuting to and from work is non-compensable because the employee is not exposed to any risk of the workplace that any other driver is not exposed to. A different situation is presented when an injury occurs as the result of travel pursuant to express or implied requirements of an employment contract. *Jecker v. Western Alliance Ins. Co.*, 369 S.W.2d 776, 779 (Tex. 1963), *overruled on other grounds by McKelvy v. Barber*, 381 S.W.2d 59 (Tex.1964); *see also Lowry*, 231 S.W. at 822-23. The rationale for the exception is that since it is the employment that exposes the employee to the risks of the public streets and highways, his injuries arise from the employment. *Jecker*, 369 S.W.2d. at 778; *see also Lowry*, 231 S.W. at 822-23. Further, the statutory definition

of course and scope of employment contemplates coverage for activities conducted on the work premises and "at other locations." Tex. Lab. Code Ann. § 401.011(12). When travel upon public roadways is an integral or necessary part of one's employment, and it is as much a part of one's work as the actual arrival at a workplace—or if there is no actual workplace other than a home office—travel is an element of the employment, and courts have held that such traveling is in the course and scope of employment. *See, e.g.*, *Jecker,* 369 S.W.2d at 776 (holding that salesman's death was compensable when he was in accident on return trip from a service call); *Employee Cas. Co. v. Hutchinson*, 814 S.W.2d 539 (Tex. App.—Austin 1991, no writ) (holding that dual purpose rule did not bar recovery for customer service employee killed in an accident on trip from family reunion to customer's home); *Lowry*, 231 S.W. at 823 (holding that salesman's death was compensable when he was in auto accident while returning home from business trip).

It would defeat the legislative scheme to simply label all travel in the direction of home as "inherently personal" and automatically exclude it from coverage under the dual purpose rule. Surely, a salesperson who organized his stops from the furthest stop to the closest one to home and began his work with the stop at the longest distance from home cannot be said to be excluded by the dual purpose rule as he works his way home.

This is not a typical commuter case. Leordeanu was a traveling sales representative who worked out of her car, storage unit, and home office. Unlike the normal commuter who travels to and from a set place, or places, of employment, she was directed in her employment to travel from place to place within her designated territory on a daily basis. On the day of her injury she traveled

to a health care provider's office in Austin, to offices in Bastrop, back to a restaurant in Austin, and was then injured in an accident as she drove towards her employer's storage unit after 9 p.m.

Leordeanu is not like a normal commuter, and was not injured as a consequence of a risk to which all traveling persons are exposed. The risk to Leordeanu was inherent in the employment itself. *See Lowry*, 231 S.W. at 823 (holding that death of salesman in auto accident while returning home from business trip was within course and scope of employment because salesman, although paid on commissions, was employee, not independent contractor); *see also Shelton*, 389 S.W.2d at 292-93 (injury arises out of the work or business of employer when it results from risk or hazard which is necessarily inherent in the conduct of such work or business). Her accident arose out of the traveling nature of her employment. *See Shelton*, 389 S.W.2d at 292-93; *Lowry*, 231 S.W. at 823. It arose from an activity that "originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." *See* Tex. Lab. Code Ann. § 401.011(12). More than sufficient evidence was provided at trial for the jury to find that, at the time of her accident, Leordeanu was traveling from a business dinner to a storage unit, and even then to her home office, for the sole purpose of furthering her employer's affairs.

The jury's finding is in accord with *Evans* and other cases relied on by the majority. In *Evans*, the Texas Supreme Court held that an employee's death was not compensable when he was killed in an accident on his way to a pre-work safety meeting because he had not yet "begun work" and coverage was therefore barred under the coming and going rule. 790 S.W.2d at 305. The court

14

stated, however, that the death would have been compensable if the accident had occurred between the safety meeting and the work site. *Id.*

In *Tramel*, the Fort Worth court of appeals held that an injury was not compensable when the employee was injured during her regular trip to the bank on behalf of her employer before work. 830 S.W.2d at 757. The accident occurred on a point in the trip that she would have traveled on her way from home to either the bank or work. *Id.* Unlike the employees in both of these cases, Leordeanu was not merely driving to work at the time of her injury but was in fact in the course and scope of her employment as a traveling pharmaceutical sales representative. *See Orgon*, 721 S.W.2d at 575; *Lowry*, 231 S.W. at 823. Once she began her work for the day, Leordeanu's situation became analogous to the *Evans* court's hypothetical in which the employee injury was compensable because it occurred during travel between the pre-work safety meeting and the work site. This case is even more compelling as Leordeanu operated out of her home office and storage facility and drove a company car.

The facts of the present case are more like those in *Meyer v. Western Fire Ins. Co.*, 425 S.W.2d 628, 629 (Tex. 1968), than *Evans* or *Tramel*. In *Meyer*, the Texas Supreme Court held that an employee's accident on the way to work was in the course and scope of employment when the employee had taken work-related phone calls from home before departing. *Id.* at 629. The employee was a service supervisor who worked partly at home, partly at his employer's office, and partly in making service calls to homes built by his employer. *Id.* He drove his own vehicle and had discretion as to when he made his service calls. He was not required to stop by the office at any given time, but tried to stop by once a day to pick up messages. *Id.* The court framed the question

15

whether he was already working at the time of the accident or whether he was merely on his way to work. *Id.* at 628. In determining whether his accident was in the course and scope of employment, the court reflected on the legislature's adoption of the "coming and going" and "dual purpose" rules:

> [T]he Legislature surely did not intend to provide that an employee whose employment requires him to travel at his own expense in his own automobile on streets and highways, either constantly or intermittently, should be denied compensation if accidently injured while thus exposed to risks growing out of his employment. Any such holding would be wholly unjust to salesmen, servicemen, repairmen, deliverymen, and a host of others who may be required to use their own automobiles in their work, and would be a strict rather than a liberal interpretation of the Workmen's Compensation Act.

*Id.* at 630 (quoting *Jecker*, 369 S.W.2d at 779). The court held that there was evidence that the employee was impliedly directed in his employment to travel to the office on the day of the accident and that the dual purpose rule did not bar him from recovering benefits. *Id.* at 630-31.

In a similar manner to the employee in *Meyer*, Leordeanu worked partly in making sales calls, partly out of her storage facility, and partly at home. She had discretion as to when she would make her calls, and as the employee in *Meyer* did, she would visit the storage unit on a regular basis in the course of her duties. Unlike the employee in *Meyer*, Leordeanu was furnished with a company car she used to further her employer's affairs—making the case that her accident was in the course and scope of employment even more compelling. Leordeanu is precisely the kind of employee that the *Jecker* and *Meyer* courts warned would be unjustly denied recovery under a "strict rather than a liberal interpretation" of the statute. *See id.*

The majority is correct that the statute is semantically challenging. But the trial court gave a correct statement of the law in its instruction and identified the ultimate destination for the

16

jury's journey.  The jury accomplished the task it was asked to do.  Because the evidence in this case, assessed under the appropriate standard, was clearly sufficient to support the jury's finding of course and scope of employment, I respectfully dissent.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton, and Waldrop

Filed:   February 13, 2009