**Judy V. POOLE, Individually and as Parent and Natural Guardian of Melissa Lynn Poole and Shawn Alan Poole for the Death of Robert A. Poole, Appellants,**

v.

**WESTCHESTER FIRE INSURANCE COMPANY, Appellee.**

No. 04–91–00177–CV.

Court of Appeals of Texas, San Antonio.

April 8, 1992.

Rehearing Denied May 8, 1992.

Kermit W. Fox, Jr., Law Offices of Kermit W. Fox, Jr., San Antonio, for appellants.

Sharon E. Callaway, Crofts, Callaway & Jefferson, Charles L. Smith, Groce, Locke & Hebdon, San Antonio, for appellee.

Before CHAPA, CARR and BIERY, JJ.

## OPINION

BIERY, Justice.

A widow and her orphaned children appeal from the granting of summary judgment in favor of Westchester Fire Insurance Company. They seek a day in court before a jury concerning workers' compensation death benefits for the death of their husband and father, Robert A. Poole. More specifically, we are asked to address whether appellee has met its summary judgment burden of proving as a matter of law that Robert Poole was *not* in the course and scope of employment as he drove from his home to his place of employment in a company car with the business advertising logo thereon. We reverse and remand.

The undisputed facts show that in 1982, Robert Poole started working for Tri–City Distributing. Tri–City's office and warehouse were located in New Braunfels, while Mr. Poole lived in Seguin. In 1984, when Mr. Poole was promoted to sales manager, he was furnished a company car leased by Tri–City. The car was painted in Budweiser colors and normally had the Budweiser logo on it. Tri–City paid for the gas, insurance, and maintenance of the car. While other Tri–City employees could have used the car during the day, Mr. Poole in fact drove the car 99% of the time. The car was to be used primarily for sales calls on buyers and potential buyers of Busch products, such as restaurants, grocery stores, and bars. Tri–City permitted Mr. Poole to drive the car to and from work each day. Tri–City did not compensate Mr. Poole for his travel time to and from work, nor did it specify or control the route he had to take. Mr. Poole reported the personal miles he drove in the company car each week which included the mileage to and from work. At the end of the year, income reflecting this mileage was added to Mr. Poole's W–2 forms on which he paid federal income tax. Thus, the use of the vehicle was a part of Robert's compensation.

On November 23, 1987, the day before the accident, Mr. Poole met with John Riffe, the general manager of Tri–City.

Mr. Poole agreed to open the warehouse the following morning, as usual, and count the inventory on the beer trucks. Mr. Riffe told Mr. Poole that after the other trucks left, they would load a route truck and make a special pre-Thanksgiving run. On November 24, 1987, Robert Poole left home a few minutes early at approximately 6:40 A.M. While on his usual route to work, his car struck the rear of a tractor-trailer rig at the intersection of Interstate 10 and the Highway 123 by-pass in Seguin. He sustained serious injuries and died later that day.

In 1988, Judy Poole, Robert Poole's widow, filed suit for worker's compensation benefits individually and on behalf of their minor children. Mrs. Poole presents a single point of error in which she contends the court erred in granting summary judgment for Westchester.

The standard for reviewing the granting of a summary judgment is:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

In its motion for summary judgment, Westchester asserted that because Robert Poole was traveling to and from work at the time of his fatal injury, he was not within the course and scope of his employment with Tri–City Distributing as a matter of law.

The general rule is that injuries sustained by employees traveling to and from work are not compensable. *Janak v. Texas Employers' Ins. Ass'n*, 381 S.W.2d 176, 178 (Tex.1964); *Standard Fire Ins. Co. v. Rodriguez*, 645 S.W.2d 534, 538 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *Dishman v. Texas Employers' Ins. Ass'n*, 440 S.W.2d 727, 728 (Tex.Civ.App.—Ft. Worth 1969, writ ref'd n.r.e.). The underlying reason for the rule is that an injury incurred in this type of travel does not arise out of a person's employment, but rather as a consequence of the risks and dangers which all traveling persons are exposed to by using the public streets and highways. *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex.1963); *see also United States Fire Ins. Co. v. Eberstein*, 711 S.W.2d 355, 357 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Smith v. Dallas County Hosp. Dist.*, 687 S.W.2d 69, 72 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

■ Mrs. Poole contends that there is a genuine issue of material fact of whether her husband was within one of three exceptions to this general rule:

1. The transportation is furnished or paid for by the employer as a part of the employment contract.

2. The employer controls the means of transportation.

3. The employer directs the employee to proceed from one place to another, otherwise known as the "special mission" exception.

The exceptions, as delineated in section 1b of article 8309, were added to the Workers' Compensation Act in 1957.[1] Even if an employee falls within one of the recognized exceptions to the "coming and going rule," he still must be in the furtherance of the employer's business at the time of the injury.[2]

We address whether Mr. Poole fit within the first exception that transportation was furnished as part of the contract of employment. In a recent case, probably not available to counsel and the trial judge at the

---

**1.** Act of May 23, 1957, 57th Leg., R.S., ch. 397, 1957 Tex.Gen.Laws 1186, 1192, *repealed by* Act of Dec. 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(15)(18), 1989 Tex.Gen.Laws 1, 115. A non-substantive re-codification can be found at

Tex.Rev.Civ.Stat.Ann. art. 8308–1.03 (Vernon Supp.1992).

**2.** *Id.*

time of the summary judgment hearing, the Austin Court of Appeals, in a well-reasoned decision by Justice Aboussie, addressed a similar situation involving summary judgment, traveling to and from work and the furnishing of transportation by an employer. *Rose v. Odiorne,* 795 S.W.2d 210 (Tex.App.—Austin 1990, writ denied). In *Rose,* appellant was injured in an automobile accident while returning home from work. Although workers drove their own cars to and from work, they received $20.00 to $25.00 per day from the company to cover gas and expenses. *Id.* at 212. After the Industrial Accident Board awarded benefits to appellant, appellee appealed to the district court, and moved for summary judgment on the ground that appellant was not within the course of his employment nor in furtherance of the company's business at the time of his injury. *Id.* The *Rose* court reversed the granting of the summary judgment, holding that appellee "failed to establish conclusively that appellant was *not* acting in the course of his employment or in furtherance of his employer's business when injured." *Id.* at 213, 215 (emphasis added).

The two-part analysis used in *Rose* when applied here supports the reversal of summary judgment in this case as well. The first question is whether or not the employee's transportation was furnished or paid for by the employer. It was undisputed, in *Rose,* that appellant was compensated for his transportation to and from work but the summary judgment record failed to prove conclusively whether the compensation was gratuitous or an integral part of the employment contract. *Rose,* 795 S.W.2d at 214. A mere assertion by an employer that the transportation provided is an accommodation, without more, is insufficient because all evidence favoring the movant's position must be uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Likewise, Robert Poole's use of a company car cannot be assumed to be gratuitous, as claimed by Tri–City, when there is a genuine issue of material fact on that issue. The summary judgment evidence, reflected by the affidavit of a certified public accountant, Robert Barger, stated that:

> Mr. Robert A. Poole was furnished transportation to and from work by his employer as part of his contract of employment and this was for the benefit of his employer. *Mr. Poole would often make stops prior to going to the office.* This was necessitated by the time constraints and number of sales calls he had to make. Mr. Poole was aware of the advertising on his car and that driving to and from work would please his employer as opposed to taking his own car. *The use of the car by Mr. Poole was not a fringe benefit in that Mr. Poole had to report income and pay tax on the use of the car and no additional salary was given to him to pay these taxes.* One might say that while Mr. Poole was traveling to and from work he was working in the advertising department of Tri–City Distributors.... The fact that an employer takes advantages of the situation by advertising on the vehicle appears to be the employer's direct attempt to derive some benefits (advertising) in consideration for the employee using the car.... While in the "Marked Budweiser Vehicle," the employee must be courteous and attentive to driving and maintain a positive image for the company.... Therefore, it might be said that logically the employee is on the job from the time he enters his vehicle until the time he leaves it at the end of the day.

(Emphasis added.) Mr. Barger's testimony provides some summary judgment evidence that Robert Poole drove a company car as part of his compensation package of employment and further that Tri–City derived certain benefits from Poole's use of the car going to and from work.

Further summary judgment evidence of articulable benefits to the employer comes from Robert Poole's widow. Mrs. Poole asserts that because her husband was a salesman and advertising representative and needed his car to make beer deliveries other than during normal business hours that Mr. Poole drove the company car as a

necessity.[3]  Further, in her affidavit, Judy Poole states:

> The vehicle in which my husband was killed was a means of transportation furnished by his employer as a part of his contract of employment.  My husband, Robert Poole, never drove that particular car except for business purposes....  Robert Poole did not reimburse his employer (Tri–City Distributing) for commuting mileage.  It was part of Robert Poole's job to drive around in that company car for advertising and sales purposes.  The car *itself* was an advertising billboard containing and displaying advertising for products sold by his employer.  Robert Poole was required to advertise for his employer by driving his car to and from work and other places in the area.  It was agreed as part of Robert Poole's contract of employment that he live in an adjoining county in order to aid sales contacts.

Judy Poole's assertion that the company car was driven at all times for the benefit of Tri–City is supported by her deposition testimony that the Pooles had two personal cars to use for non-business driving.  Her contention that the company required Robert Poole to live in Seguin, as part of his employment contract is supported by Robert Poole's general manager, John Riffe.  In his deposition, Mr. Riffe testified that the company car was furnished to Robert Poole at the time he was promoted to sales manager "to go back and forth to work and use as a company vehicle."  He later stated that Poole did not reimburse the company for any miles driven and that although he did not know of any company policy requiring Poole to live in Seguin it was advantageous to the company for Poole to live there.  He admitted that Poole was "familiar with the people over in that area and it was one of our weaker selling areas, and he knew a lot of people over that way."  We must take this controverting summary judgment evidence as true.  *Nixon,* 690 S.W.2d at 548–49.  We hold a genuine issue of material fact exists as to whether Robert Poole received the use of a company car

as an integral part of his contract of employment.

The second step of the *Rose* analysis investigates the existence or nonexistence of a genuine issue of material fact about whether the employee, at the time of his injury, was in furtherance of the employer's business.  *Rose,* 795 S.W.2d at 213.  The summary judgment burden, of course, is on Westchester to prove conclusively the nonexistence as a matter of law.  *Id.,* at 214.  In order to prevail on the merits on the other hand, the employee must show by a preponderance of the evidence he *was* acting in furtherance of his employer's business at the time he sustained the injury.  *Texas Gen. Indem. Co. v. Bottom,* 365 S.W.2d 350, 353 (Tex.1963); *Cuellar v. City of San Antonio,* 821 S.W.2d 250, 257 (Tex.App.—San Antonio 1991, n.w.h.) (Biery, J., concurring).  In the instant case, Westchester has failed to prove as a matter of law that Robert Poole *was not* in furtherance of Tri–City's business, particularly in light of the summary judgment evidence that Poole used the company vehicle with the advertising logo to make deliveries before and after normal business hours.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for a new trial.

---

**3.** Any vehicle in Texas that is used for the transportation of liquor must have a state permit as well as a designation painted or printed on it. Tex.Alco.Bev.Code Ann. § 42.04 (Vernon 1978).