**AMERICAN PROTECTION
INSURANCE COMPANY,**
Appellant,

v.

Liana LEORDEANU, Appellee.

No. 03–06–00529–CV.

Court of Appeals of Texas,
Austin.

Feb. 13, 2009.

Rehearing Overruled March 9, 2009.

The issue presented involves the application of section 401.011(12)(B) of the Texas Workers' Compensation Act which is known as the "dual purpose rule." This section governs the compensability of injuries sustained by an employee while traveling for both personal and business purposes. *See* Tex. Lab.Code Ann. § 401.011(12)(B) (West 2006). American Protection argues that there is no evidence to support the jury's finding that Leordeanu's injury was compensable and that the trial court erred as a matter of law in applying the dual purpose rule of section 401.011(12)(B). We conclude that there is no evidence to support the jury's finding that Leordeanu sustained a compensable injury under the Texas Workers' Compensation Act. Accordingly, we reverse the judgment of the district court and render judgment that Leordeanu take nothing on her claims for workers' compensation benefits.

Jack W. Latson, Robert D. Stokes, Flahive, Ogden & Latson, Austin, for Appellant.

Wade F. Stewart, Law Offices of Wade F. Stewart, Houston, for Appellee.

Before Justices PATTERSON, PEMBERTON and WALDROP.

## OPINION

G. ALAN WALDROP, Justice.

We withdraw our prior opinion, dissenting opinion, and judgment in this case and substitute the following in their place.

American Protection Insurance Company appeals a district court judgment awarding workers' compensation benefits to appellee Liana Leordeanu based on a jury's finding that Leordeanu sustained a compensable injury while in the course and scope of her employment with American Protection's insured, Schering Plough, Inc.

At the time of her injury, Leordeanu worked for Schering Plough as a pharmaceutical sales representative. Her job duties required that she spend a significant portion of her time traveling to pharmacies and doctors' offices within a designated area. Schering Plough provided Leordeanu with a car and with a storage unit for storing drug samples and marketing materials. Leordeanu's storage unit was located at a storage facility next door to the apartment complex where she lived. In addition, Leordeanu testified that she maintained a business office in her apartment. From time to time as part of her job, Leordeanu would entertain doctors and their staff at local restaurants and pay for their drinks and food.

On March 21, 2003, Leordeanu met with a doctor and members of his staff for dinner at La Feria Restaurant in south Austin. After dinner and on her way

home from the restaurant, Leordeanu was involved in a single car accident and sustained serious injury. According to Leordeanu, she had intended to stop at the storage unit next door to her apartment complex on her way home from the restaurant and then to finish job-related paper work at her home office.

American Protection, the workers' compensation carrier for Schering Plough, denied Leordeanu's claim for compensation for the injuries she sustained in the accident. Leordeanu then submitted the dispute to the Texas Department of Insurance Workers' Compensation Commission Division. The Division held a contested case hearing and determined that Leordeanu did not have a compensable claim because she was not in the course and scope of employment at the time of the accident.[1] An appeals panel of the Division affirmed.

Leordeanu sought judicial review of the appeals panel's decision. American Protection filed a motion for summary judgment arguing that the dual purpose rule of the Workers' Compensation Act barred Leordeanu's claim for benefits "because there has been no evidence offered that Ms. Leordeanu would not have gone home (that she would have abandoned the trip home) absent a business reason for going to the [storage unit]. . . ." The district court denied American Protection's motion for summary judgment, and the case was tried to a jury. The jury found that Leordeanu sustained a compensable injury, and the district court entered judgment in favor of Leordeanu.

On appeal, American Protection argues that there is no evidence to support the jury's finding that Leordeanu sustained a compensable injury. In reviewing no evidence points, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *Id.* We will sustain a no evidence point of error when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998); *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–63 (1960)).

Under the Texas Workers' Compensation Act, an insurance carrier is liable for compensation for an employee's injury if the injury arises out of and in the course and scope of employment. Tex. Lab.Code. Ann. § 406.031 (West 2006). Generally, an employee is not in the course and scope of his employment while driving his own vehicle to and from his place of work. *Soto v. Seven Seventeen HBE Corp.*, 52 S.W.3d 201, 205 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Upton v. Gensco, Inc.*, 962 S.W.2d 620, 621 (Tex. App.-Fort Worth 1997, pet. denied). The reasoning underlying this general rule is

---

1. The Division also concluded that "the carrier [American Protection] is relieved of liability for compensation because the claimed injury occurred while the claimant [Leordeanu] was in a state of intoxication." However, on judicial review of the Division's decision, a jury found that Leordeanu was not intoxicated at the time of the accident. This finding is not challenged on appeal.

that injury incurred in such travel does not arise out of that person's employment, but rather is suffered due to the dangers and risks to which all traveling persons are exposed. *Evans v. Illinois Employers Ins.*, 790 S.W.2d 302, 304 (Tex.1990). Stated another way, the general rule is that travel to and from work, without some special instruction or "special mission" from the employer directing the employee to proceed from one place to another, is considered travel for personal purposes rather than travel for business purposes. *See id.* Thus, under the Workers' Compensation Act, travel for exclusively business purposes is considered within the course and scope of employment, and travel for exclusively personal purposes is not within the course and scope of employment. *See* Tex. Lab.Code Ann. § 401.011(12).

■ A different situation is presented when an employee is engaged in travel that has both personal and business-related purposes. The dual purpose rule is designed to address whether an employee is in the course and scope of employment for the purpose of coverage when injury occurs during travel that is for both personal and business purposes. *See* Tex. Lab.Code Ann. § 401.011(12)(B). The rule provides that injuries incurred during travel for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment unless (1) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and (2) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel. *Id.; Janak v. Texas Employers' Ins. Ass'n*, 381 S.W.2d 176, 179 (Tex.1964). In order to be entitled to workers' compensation benefits in dual purpose situations, the employee or his survivors must satisfy both prongs of section 401.011(12)(B). *Janak*, 381 S.W.2d at 180; *Tramel v. State Farm Fire & Cas. Co.*, 830 S.W.2d 754, 756 (Tex.App.-Fort Worth 1992, writ denied). This means that the travel would have occurred even if the personal purpose were removed from the analysis *and* the travel would not have occurred if the business purpose of the travel were removed from the analysis. *See* Tex. Lab.Code Ann. § 401.011(12)(B).[2]

■ It is undisputed that Leordeanu was injured while traveling from the business-related dinner meeting to her apartment and the storage unit next door to her apartment. Leordeanu testified that upon leaving the restaurant on the night of the accident, she intended to travel first to the storage unit next door to her apartment and then to her apartment to finish certain job-related paper work. These tasks furthered the business affairs of Leordeanu's employer, Schering Plough, and were, therefore, business purposes for the travel.

Leordeanu also testified that when she left La Feria Restaurant on the night of the accident, she was "planning on going

---

2. The dissent argues that because Leordeanu's employer furnished her car and she was driving her car, at least in part for business purposes, her injury is compensable. This, of course, is not the way the statutory structure works. The fact that Leordeanu was driving an employer-furnished car simply nullifies an exception to compensability that might otherwise apply. *See* Tex. Lab.Code Ann. § 401.011(12)(A) (West 2006). Nullifying an exception to compensability does not establish compensability. Leordeanu must still prove that her travel at the time of the injury was in the course and scope of employment. In the case of dual purpose travel, that means satisfying both prongs of section 401.011(12)(B).

first to the storage unit and then to the office, to my home." She gave the following testimony during cross-examination:

[Counsel]: Now, I understand that you left the restaurant and you drove from La Feria on Loop 360; is that correct?

[Leordeanu]: Uh-huh.

. . .

[Counsel]: And then you would turn west on Highway 22; is that correct?

[Leordeanu]: Yes, sir.

[Counsel]: And you would do those things to go to your home; is that correct?

[Leordeanu]: I would do those things to go in the direction of first the storage unit, as well as the direction of home as well as the office, yes.

[Counsel]: And I understand your testimony is that you were going to the storage locker.

[Leordeanu]: That's right.

[Counsel]: And I'm asking you about if you were leaving La Feria and going home and not going to the storage locker, that's the same route you would take, correct?

[Leordeanu]: That's right.

[Counsel]: So the routes are identical at that point in time in the travel, leaving the restaurant and going to either the storage unit or your apartment?

[Leordeanu]: That's right.

[Counsel]: Now, did you intend to spend the night at home that night?

[Leordeanu]: Yes.

[Counsel]: So you were also going home as well as going to the storage locker?

[Leordeanu]: Yes.

Leordeanu added that she intended to stay at her apartment after finishing her work there. Thus, she was also traveling home from the restaurant-a personal pur-

pose for the same travel. *See Evans,* 790 S.W.2d at 305 (stating employee's trip from work to home was "purely personal"); *Tramel,* 830 S.W.2d at 757 (noting that employee's trip from home to work serves "private, personal purpose"). Leordeanu's travel from the restaurant that night was, therefore, for both business and personal purposes, and the question of whether she was acting in the course and scope of employment is governed by the dual purpose rule of section 401.011(12)(B).

Under the dual purpose rule of section 401.011(12)(B), it is not enough that Leordeanu intended to finish certain job-related paper work upon returning to her apartment for her injury to be compensable. Rather, under the rule, Leordeanu was required to show that she would not have made the travel that resulted in her injuries had there been no business of her employer to be furthered by the travel. In other words, Leordeanu had to show that she would not have returned home after dinner on the night of the accident, but for the need to complete business-related paperwork. However, there is no evidence in the record to that effect.

Leordeanu urges this Court to view her intended travel on the night of the accident as two separate, single purpose segments of travel—from the restaurant to the storage unit and from the storage unit to her apartment—and to analyze each segment of her travel separately. She argues that the first phase of her intended travel, from the restaurant to the storage unit, was not dual purpose travel because she had no personal reason for going to the storage unit. She contends that the dual purpose aspect of the trip did not occur until the second phase of her intended travel, from the storage unit to her apartment, because she had both a business reason (finishing her paper work) and a personal reason (going home) for traveling from the stor-

age unit to her apartment. Thus, according to Leordeanu, because the accident occurred during the first phase of her travel and because that phase of the travel was not a dual purpose trip, she was in the course and scope of employment at the time of the accident.

The San Antonio Court of Appeals adopted a similar approach to dual purpose travel in *St. Paul Fire & Marine Insurance Co. v. Confer*, 956 S.W.2d 825 (Tex. App.-San Antonio 1997, pet. denied). In that case, Dr. Ronald Confer was killed in an automobile accident while traveling home from work. He had left work early so that he could also run a business errand to purchase computer supplies for use at his office. *See id.* at 827. The route to the computer supply store was along Dr. Confer's normal route home, and Dr. Confer intended to continue home after running the business errand. *See id.* However, Dr. Confer was killed before he reached the computer supply store.[3] *See id.* Dr. Confer's widow sued for death benefits under the Workers' Compensation Act, and a jury found that Dr. Confer was in the course and scope of his employment at the time he was killed. *See id.* The issue on appeal was whether the evidence adduced at trial satisfied both prongs of the dual purpose rule of the Workers' Compensation Act. *See id.* at 828. The court addressed several cases concerning injuries sustained by employees while traveling *from home* on a business errand. *See Evans*, 790 S.W.2d at 305 (holding employee's death not compensable where employee was on way from home to pre-work safety meeting); *Meyer v. Western Fire Ins. Co.*, 425 S.W.2d 628, 629 (Tex. 1968) (holding injury compensable where employee was involved in accident on way

to work after having taken work-related telephone calls from home); *Janak*, 381 S.W.2d at 182 (holding injury compensable where accident occurred on way to work *after* employee had deviated from his normal route in order to pick up ice for use during work). It then distinguished the facts presented in Dr. Confer's case as follows:

> the controlling issue in cases such as this is during what segment of a trip did the injury occur; the segments being home to business errand and business errand to work. These segments are reversed in the present case. In other words, Dr. Confer's fatal trip consisted of segments including work to business errand and business errand to home. Applying the logic of the cases discussed above, an injury occurring between work and the business errand would be compensable because the employee has not completed work, while an injury occurring between the business errand and home would not be compensable because the employee's work would be finished.

*Id.* at 830.

■ We are of the view that the approach taken in *Confer*—separating dual purpose travel into "business related" and "personal related" segments—departs from the mandatory requirements of the dual purpose rule as set out in the Workers' Compensation Act. Section 401.011(12)(B), when it applies, does not contemplate analyzing a claimant's dual purpose travel and determining whether particular segments or portions of that travel are for a single, business-related purpose. If travel is exclusively for a business-related purpose, section 401.011(12)(B) does not apply at all. Section 401.011(12)(B) only applies whenever

---

**3.** Interestingly, the *Confer* court expressly found that Dr. Confer's travel at the place of occurrence of the injury was dual purpose travel and section 401.011(12)(B) was applicable. *See* 956 S.W.2d at 829.

the travel is for *both* business and personal purposes (dual purpose) and the travel cannot be ascribed a single purpose.

 When travel is dual purpose, the dual purpose rule requires the court to determine the answers to two questions: (1) would the travel during which the claimant was injured have occurred even if there were no personal purpose; and (2) would the travel not have occurred if there were no business purpose.[4] If the answer to either of these questions is "no," then the employee is not deemed to be in the course and scope of employment. If the answers to both questions are "yes," the employee is deemed to be in the course and scope of employment and the injury is potentially compensable. The statute does not allow a court to approach the analysis of compensability of dual purpose travel in any other way.

 The dual purpose rule, applied correctly, can be an effective mechanism for ferreting out whether dual purpose travel is primarily business travel or primarily personal travel, and the pertinent questions can be posed and answered for any point in a claimant's travel. The dual purpose rule as it is currently formulated in the Workers' Compensation Act does

not, however, allow for assigning single purpose segments or phases to dual purpose travel. Evidence as to whether a person is on the "business-related segment" of dual purpose travel when an accident occurs is not relevant to the analysis because it does not answer either question set out in section 401.011(12)(B), the key inquiries of the dual purpose rule. Rather, the evidence must support answers to the questions in section 401.011(12)(B)(i) and (ii), regardless of whether the business purpose for the travel had been completed at the time of the accident.

The *Confer* court articulated its reasoning as follows:

> The evidence supports a finding that Dr. Confer would not have been on Interstate 35 at 4:20 p.m. if he had not been going to Altex [a business errand for his employer]. The fact that Altex happens to be along the same route as his route home should be of little consequence. Why should the result be any different if Altex had been located somewhere off of Interstate 35, forcing Dr. Confer to travel away from his regular route? The controlling issue should be whether the employee is traveling on behalf of his

---

4. Part of the difficulty with this statute is that the provisions of section 401.011(12)(B)(i) and (ii) are exceptions to the general rule of section 401.011(12)(B) which is itself an exception to the general definition of "course and scope of employment." This difficulty is compounded by the fact that the requirements of section 401.011(12)(B)(i) and (ii) are conjunctive, but section 401.011(12)(B)(ii) is drafted in the form of a double negative—"the travel would *not* have been made had there been *no* affairs or business of the employer to be furthered by the travel." Thus, to address an issue such as the one presented by this case, the courts and lay juries are faced with a rule that (translated) looks something like this:

> An employee is in the course and scope of employment when engaging in any activity

of any kind that has to do with the business of the employer while the employee is engaged in the furtherance of the affairs of the employer *except* when the employee is traveling for both business and personal purposes *unless* the travel would have been made even if there were no personal purpose involved *and* the travel would *not* have been made had there been *no* business purpose involved.

Although semantically challenging, the rule can be deciphered and appears to work when applied correctly. However, the way it works is not readily apparent. Expecting juries to consistently and knowledgeably apply a charge instruction based on the structure of this statute is problematic.

employer *at the time* of the accident, not on what road he happens to be traveling. 956 S.W.2d at 830 (emphasis in original). This approach basically concludes that, since the portion of Dr. Confer's travel from the office to Altex (the stop on the business errand) had a business-related component, such travel would be in the course and scope of employment even though it was also personal travel to the doctor's home. The portion of the travel from Altex to Dr. Confer's home then lacks any business-related component and is, therefore, not in the course and scope of employment, even though the personal travel home would necessarily include both portions of the trip if Dr. Confer were not stopping at Altex.

The *Confer* approach adopts a policy position to the effect that if a claimant is traveling for a business purpose *at all*, even if there is also a personal purpose, then the travel is in the course and scope of employment and any injury incurred during the travel compensable. This might arguably be a reasonable policy position. It would allow injuries to be compensable any time there is a business-related component to travel no matter how incidental. However, this is not the policy position that the Legislature has taken in section 401.011(12). The statute mandates that if the travel has dual purposes—both business and personal—it is only within the course and scope of employment and, therefore, compensable, if it meets the requirements of section 401.011(12)(B).

If the *Confer* approach were correct, section 401.011(12)(B) would not exist. The statute would simply provide that if travel had any business purpose at all, it is in the course and scope of employment. There would not be a dual purpose rule because there would be no special treatment of dual purpose travel. Dual purpose travel would, by definition, have a

business purpose component and, therefore, would always be travel in the course and scope of employment. Thus, if we are to grant section 401.011(12)(B) any meaning at all, we cannot take the approach proposed in the *Confer* opinion.

The answer to the *Confer* court's rhetorical question "Why should the result be any different if Altex had been located somewhere off of Interstate 35, forcing Dr. Confer to travel away from his regular route?" is twofold: first, the statute expressly declines to adopt the policy of allowing coverage whenever there is any business-related component to travel, and it mandates a different result for dual purpose travel based on specific statutory criteria; second, the statutory scheme has a rational basis in that a policymaker could well come to the conclusion that dual purpose travel should not be compensable unless it is predominately for a business-related purpose rather than predominately for a personal purpose with an incidental business-related component. Section 401.011(12)(B) appears to be an attempt to create a statutory system for distinguishing between predominately business-related travel and predominately personal travel. Consequently, in Dr. Confer's case, the result would be different if Altex were not located on Interstate 35 because Dr. Confer's travel to Altex would then not have happened at all but for the business purpose. Since, instead, Dr. Confer was on his route home when the accident happened, it was travel that he would have made in any event and the business purpose of stopping at Altex was incidental. Under the language of section 401.011(12)(B), this travel was not in the course and scope of Dr. Confer's employment. The notion that the timing of the travel is significant—i.e. leaving early from work in order to make the business stop

and get home at the usual time—appears nowhere in the statute.

■ In applying the dual purpose rule, we ask the statutory questions about the travel at the point that the claimant is injured.[5] In this case, we know that Leordeanu was traveling to both her home and the storage unit at the point at which she was injured. The route of travel to both destinations was identical. Thus, her travel at that point was dual purpose and the provisions of section 401.011(12)(B) apply. We then ask the statutory questions. First, would her travel have been made even had there been no personal or private affairs to be furthered by the travel? In this case, Leordeanu concedes she was going home for the evening from the restaurant, but was going to drop off some items at the storage unit on the way. There is nothing in the evidence to suggest that Leordeanu would have traveled to the storage unit even if she were not going home. Thus, on this record, the answer to the first question, rather than being a conclusive "yes," is, at best, equivocal.[6] Second, would the travel not have been made had there been no affairs or business of the employer to be furthered by the travel? Once again, Leordeanu concedes that she was going home for the evening from the restaurant. There is no evidence that Leordeanu would not have made this travel if she did not intend to drop off items at the storage unit.[7] On the contrary, Leordeanu concedes that she was going home whether or not she dropped items off at the storage unit. Therefore, on this record, the answer to the second question is "no," and it precludes a finding that Leordeanu was in the course and scope of her employment at the time of her injury.[8]

5. Section 401.011(12)(B)(i) of the Texas Labor Code refers to the "travel to the place of the occurrence of the injury."

6. Since there is insufficient information in the record to answer the question posed by the first prong of section 401.011(12)(B) "yes," one could argue that Leordeanu has failed to satisfy either prong of the statute. However, the case was briefed and argued as a failure by Leordeanu to satisfy the second prong of section 401.011(12)(B), and even if we assume the answer to the first prong of section 401.011(12)(B) is "yes," the lack of evidence as to the second prong of the statute is dispositive.

7. Here the problem of the double negative in the statute comes up again. Dealing with a question that involves a double negative and to which the answer is "no" can create confusion. Here the question can be rephrased: "If Leordeanu had not planned to drop by the storage unit, would she have cancelled (or not made) the travel?" The answer to this question is more easily seen to be "no" because she concedes that she was going to go home in any event and the route of travel to both the storage unit and her apartment at the time of the injury was the same.

8. The dissent argues that this case is not governed by the dual purpose rule, but by the "continuous coverage" principle applied by the court in *Aetna Casualty & Surety Co. v. Orgon*, 721 S.W.2d 572 (Tex.App.-Austin 1986, writ ref'd n.r.e.). The continuous coverage principle has been applied when the injury occurs while an employee is traveling away from his or her home town for business purposes, but is not at the moment of an accident directly engaged in business activity. The rationale behind the principle is that while there may not be a specific business purpose in getting dressed in the morning in your hotel or walking across the street to eat at a nearby restaurant while staying overnight in another city, the employee would not be doing those activities at all but for the business purpose of the trip. In such a circumstance, the employee is not engaged in dual purpose travel, and therefore, the dual purpose rule does not apply. However, if an employee is traveling and there is a personal purpose or component of the travel at the time of the injury, the requirements of the dual purpose rule must be followed. For example, if an employee on a business trip away from home visits relatives who live nearby during the course of his travel for

We conclude that there is no evidence in the record to satisfy the second prong of the dual purpose rule which requires that the travel would not have occurred if the business purpose of the travel were removed from the equation. There is no evidence that Leordeanu would have been traveling on some other route to her home when she was injured had she not intended to stop by the storage unit next door to her apartment. The evidence is conclusive that Leordeanu's travel from the restaurant to her home at the point where she was injured would have been identical whether she had intended to stop by the storage unit or not. There is no evidence that she would not have made the travel that resulted in her injuries had there been no business of her employer to be furthered by the travel.

The dual purpose rule of the Workers' Compensation Act bars Leordeanu's claim for workers' compensation benefits. Therefore, we conclude that there is no evidence to support the jury's finding that Leordeanu sustained a compensable injury. Accordingly, we reverse the judgment of the district court and render judgment that Leordeanu take nothing on her claims for workers' compensation benefits.

Dissenting Opinion by Justice PATTERSON.

JAN P. PATTERSON, Justice, dissenting.

I withdraw my previous dissenting opinion and substitute the following opinion on rehearing. Liana Leordeanu was a pharmaceutical sales representative injured in an accident while driving from a business dinner to a storage unit to unload and reorganize the sales materials in her company car. This case hinges on a single issue: Was Leordeanu in the course and

business purposes and is injured, such a case may implicate the dual purpose rule.

This case is not akin to *Orgon* or other cases that have applied the continuous coverage principle such as *Shelton v. Standard Insurance Co.*, 389 S.W.2d 290 (Tex.1965), and *Texas Employers Insurance Ass'n. v. Cobb*, 118 S.W.2d 375 (Tex.Civ.App.-El Paso 1938, writ ref'd). In *Orgon* and related cases, there was not an issue as to the applicability of the dual purpose rule because the courts found as a matter of law that the travel or activity involved did not include any personal purpose. When there is no personal purpose component of travel, injuries that arise during the course of the travel are usually compensable if the travel is in furtherance of the affairs or business of the employer. However, when there is a personal purpose component of travel, even if there is also a business component, the dual purpose rule comes into play. That is the case here. Leordeanu acknowledges that she was traveling home for the evening as well as planning to stop by the storage unit. This was dual purpose travel.

Leordeanu and the dissent raise the issue of the possible applicability of the principle in *Orgon* and related cases for the first time on rehearing in this Court. Leordeanu's theory—both in the trial court and in this Court on original submission—was not that the continuous coverage principle somehow applied to the travel at issue here, but that dual purpose travel may be divided into single purpose segments, making an injury compensable based on the segment of the travel in which it occurred. As we have explained, this theory is inconsistent with labor code section 401.011.

The dissent's failure to distinguish between the principle articulated in *Orgon* and the dual purpose rule is highlighted by noting that, under the dissent's theory, when an employee has a home office and travels locally in her work, a "continuous coverage" doctrine would necessarily trump both the "coming and going" rule and the dual purpose rule in all such cases. This is not the law. The "coming and going" rule, the continuous coverage principle set out in *Orgon*, and the dual purpose rule work in harmony and apply to different factual circumstances. The principle articulated in *Orgon* does not apply when, as here, the employee is traveling for both business and personal purposes. Such travel is governed by the dual purpose rule. *See Rose v. Odiorne*, 795 S.W.2d 210, 213–14 (Tex.App.-Austin 1990, writ denied).

scope of her employment at the time of her injury? The jury answered the question in the affirmative. Because there is ample evidence to support the jury's finding, and the evidence is legally and factually sufficient, I would affirm the judgment.

Workers' compensation benefits are recoverable only where the death or injury in question occurs in the course and scope of the employee's employment. *Deatherage v. International Ins. Co.*, 615 S.W.2d 181, 182 (Tex.1981). " 'Course and scope of employment' means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." Tex. Lab. Code Ann. § 401.011(12) (West 2006). This statutory term includes activities "conducted on the premises of the employer *or at other locations.*" *Id.* (emphasis added). Work that is directed or authorized by the employer is within the course of employment regardless of whether the work benefits the employer's business. *Burkett v. Welborn*, 42 S.W.3d 282, 287–88 (Tex.App.-Texarkana 2001, no pet.). An injury "arises out of" employment if it would not have occurred if the conditions and obligations of employment had not placed the claimant in harm's way. *Texas Workers' Comp. Ins. Fund v. Simon*, 980 S.W.2d 730, 735–36 (Tex.App.-San Antonio 1998, no pet.).

It is well settled that courts should construe the Workers' Compensation Act to carry out the legislature's evident purpose of compensating injured workers and their dependents. *Texas Workers' Compensation Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 652 (Tex.2004); *Ackerson v. Claredon Nat. Ins. Co.*, 168 S.W.3d 273, 275 (Tex.App.-Austin 2005, pet. denied). Its provisions "should not be hedged about

with a strict construction but should be given a liberal construction to carry out its evident purpose." *Lujan v. Houston Gen. Ins. Co.*, 756 S.W.2d 295, 297 (Tex.1988) (quoting *Yeldell v. Holiday Hills Ret. & Nursing Ctr., Inc.*, 701 S.W.2d 243, 245 (Tex.1985)).

With regard to traveling salespersons like Leordeanu, Texas has adopted the "continuous coverage principle." *See Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292–93 (Tex.1965); *Aetna Cas. & Sur. Co. v. Orgon*, 721 S.W.2d 572, 574–75 (Tex. App.-Austin 1986, writ ref'd n.r.e.). As explained by Professor Larson and adopted by this Court in *Orgon:*

> Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct depart[ure] on a personal errand is shown.

*Orgon*, 721 S.W.2d at 574–75 (quoting 1A A. Larson, Workmen's Compensation Law § 25.00 (1985)). This Court recognized in *Orgon* that the " 'continuous coverage principle' is the prevailing view throughout the United States." *See id.* (citing cases). Under this principle, Leordeanu's injury would be compensable because there was no evidence of a distinct departure on a personal errand at the time of her injury. *See id.*

The majority begins its analysis from the vantage point of another well-established rule: Ordinarily an employee is not within the course and scope of his employment when he is injured going to and coming from work. Tex. Lab.Code Ann. § 401.011(12)(A); *Evans v. Illinois Employers Ins.*, 790 S.W.2d 302, 304 (Tex. 1990); *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex.1963). The rationale for this rule is that such injuries do not arise out of a person's employment,

but are suffered as a consequence of the risk to which all traveling persons are exposed. *Evans*, 790 S.W.2d at 304. But this is not a "coming and going" case; it is a traveling salesperson case. *See Shelton*, 389 S.W.2d at 292–93 (recognizing distinction between "going to or returning from" case and cases involving traveling salesmen). As a traveling salesperson without a fixed place of employment, the risk to Leordeanu was inherent in the employment itself. *See United States Fid. & Guar. Co. v. Lowry*, 231 S.W. 818, 823 (Tex.Civ.App.-Austin 1921, no writ). An injury is deemed to arise out of employment if the conditions of employment put the claimant at a greater risk of injury by virtue of his travel. The neutral risk of an automobile accident is causally related to employment if it involves an employee whose duties increase his exposure to such a hazard. "The problem in each case is to determine whether the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *Shelton*, 389 S.W.2d at 292.

Moreover, even if we viewed this as a "coming and going" case, there are some exceptions to this general rule. Transportation to and from the place of employment may be in the course and scope of employment if the transportation is furnished as part of the contract of employment or is paid for by the employer. Tex. Lab.Code Ann. § 401.011(12)(A)(i); *Bottom*, 365 S.W.2d at 353–54; *see also Poole v. Westchester Fire Ins. Co.*, 830 S.W.2d 183, 185–87 (Tex.App.-San Antonio 1992, writ denied) (issue of fact as to whether sales manager on way to work in company car with logo fell within exception to general commute rule). The key issue in determining whether compensation is available for an injury incurred while traveling to or from work under this exception is whether the employer's furnishing or paying for the transportation was an integral part of the employment contract or merely an accommodation to the employee. In the former case, the injury is within the *course of employment and is compensable;* in the latter, it is not. *See Rose v. Odiorne*, 795 S.W.2d 210, 214–15 (Tex.App.-Austin 1990, writ denied) (oil rig employee entitled to compensation if employer's transportation plan was essential for transporting employees to remote job site, benefitted employer, and was needed to operate rig). There is no dispute that Leordeanu's employer furnished and/or paid for Leordeanu's transportation. Thus, as a matter of law, this exception applies and renders Leordeanu's injury compensable under the statute.

The majority, however, rejects application of the "continuous coverage principle" and the employer provided transportation exception in labor code section 401.011(12)(A)(i) in favor of an analysis under labor code section 401.011(12)(B).[1]

---

1. The majority suggests that it is improper to address the application of the "continuous coverage principle" because the appellee raises this argument for the first time in this Court on rehearing. *See American Prot. Ins. Co. v. Leordeanu*, 278 S.W.3d 881, 890–91 n. 8, No. 03–06–00529–CV (Tex.App.-Austin Feb. 13, 2009). While the majority is correct that an appellate court will not generally consider arguments raised for the first time on rehearing, an exception exists when an appellee fails to advance an argument because he is attempting to preserve the judgment of a lower court. *Chesshir v. First State Bank of Morton, Tex.*, 620 S.W.2d 101, 101–02 (Tex.1981) (per curiam); *Estate of Lindburg v. Mount Pleasant Indep. Sch. Dist.*, 746 S.W.2d 257, 260 (Tex. App.-Texarkana 1988, no writ). In this case, Leordeanu received a favorable judgment below and, therefore, had no duty to complain in the trial court, much less raise an alternative theory of recovery on appeal. *See Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex.1988).

Known as the "dual purpose rule," section 401.011(12)(B) of the labor code addresses situations in which an employee is injured while traveling for both personal and business reasons. Tex. Lab. Code Ann. § 401.011(12)(B). The rule provides that injuries incurred during travel for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment unless (1) the trip to the place of the accident would have been made even had there been no personal or private affairs of the employee to be furthered by the trip, and (2) the trip would not have been made had there been no affairs or business of the employer to be furthered by the trip. *Id.; Janak v. Texas Employers' Ins. Ass'n,* 381 S.W.2d 176, 180–81 (Tex.1964); *Wausau Underwriters Ins. Co. v. Potter,* 807 S.W.2d 419, 422–23 (Tex.App.-Beaumont 1991, writ denied). Texas courts have held that to be entitled to workers' compensation benefits in dual purpose situations, the employee or his survivors must satisfy both prongs of the dual purpose rule. *Janak,* 381 S.W.2d at 180; *Tramel v. State Farm Fire & Cas. Co.,* 830 S.W.2d 754, 756 (Tex.App.-Fort Worth 1992, writ denied).

Citing to *Evans* that an employee's trip from "work to home" was "purely personal" and to *Tramel* "noting that an employee's trip from home to work serves 'private, personal purpose[s],' " the majority concludes that Leordeanu's travel from the restaurant on the night in question was for both business and personal purposes, and that she did not satisfy both prongs of the dual purpose test. Although arguing that "this is a simple case involving a single issue," American Protection variously urges that (i) unless the motivating purpose for the travel to the place of occurrence of the accident is a work purpose, travel in service of a personal purpose is

not covered under the Act, (ii) travel from work to home is inherently personal, and (iii) the work must be the primary reason for the travel, without which reason, the trip would not have occurred. American Protection acknowledges that Leordeanu submitted sufficient evidence to prove a business reason for the trip, but asserts that unless she "can show that she would have not returned to home on the evening of her accident," she is not entitled to recovery under the Act.

We will sustain no-evidence points of error only if the record shows (1) a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence bar the appellate court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810–11 (Tex.2005). We must view the evidence in the light most favorable to the verdict, crediting favorable evidence where reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 827. The final test for legal sufficiency must always be whether the evidence at trial would allow reasonable and fair-minded people to reach the verdict under review. *Id.* "It is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Soto v. Seven Seventeen HBE Corp.,* 52 S.W.3d 201, 206 (Tex.App.-Houston [14th Dist.] 2000, no. pet.) (quoting *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000)).

The trial court rejected American Protection's motion for summary judgment asserting that the dual purpose rule barred Leordeanu's claim for benefits "because there has been no evidence offered that

Ms. Leordeanu would not have gone home (that she would have abandoned the trip home) absent a business reason for going to the [storage unit]...." As the trial court correctly recognized in denying summary judgment, the disputed question as to whether Leordeanu was acting within the course and scope of employment was a question for the jury.

The evidence showed that, as a traveling pharmaceutical sales representative, Leordeanu marketed pharmaceutical products to pharmacies and approximately 400 doctors in a designated territory that included Austin, Bastrop, La Grange, New Braunfels, and San Marcos. According to her testimony, Leordeanu often hosted physicians and their staffs at work-related events at local restaurants. Her job description included calling on doctors, hosting events, and marketing to doctors, pharmacies and their staffs. Each sales call was reported to the company and the job contemplated extensive administrative tasks, including documenting each contact, distributing and accounting for manufacturers' samples, and submitting expense reports. To accomplish these administrative tasks, Leordeanu maintained a home office in her apartment.

American Protection adduced testimony from a representative of the employer that Leordeanu's place of employment was her home and that the company did not maintain an office in the State of Texas. Leordeanu converted an extra room into her home office where she maintained office equipment, including a computer, printer, and facsimile machine—all paid for and maintained by the company. She also maintained sales materials and manuals in her home office. Another sales representative testified that each sales representative has a similar setup. Leordeanu did her extensive paperwork in her home office. She sometimes did paperwork at

night and on the weekend. The company also provided Leordeanu with a company vehicle for which it paid for business-related gas and repair expenses.

Each sales representative also had the option of maintaining a storage area in his home for which he was paid a monthly stipend or maintaining a separate storage unit off site which was paid for by the company. Leordeanu opted to maintain a storage unit in a nearby storage facility that was temperature controlled. She stored samples and marketing materials and kept no personal items in the storage unit. The storage unit was on the road to her home. She would go to her storage unit frequently, "twice a day," "quite a few times," often on weekends. A representative of her employer testified that it was at her discretion when to go to the storage unit.

On the day of the accident, Leordeanu completed a sales call at a doctor's office in Bastrop and then drove to La Feria Restaurant in Austin to host a dinner for medical personnel. It is undisputed that the event at the La Feria Restaurant was hosted by the company and was a company event. It was a "standard" event for a customer. Approximately ten employees and the doctor from the clinic attended. The sales representatives often hosted similar events each week that were considered part of their work.

Leordeanu testified that on the evening of the accident, after the restaurant event, she was going first to her storage unit to unload and organize her car and was then headed home to complete an "hour, hour and a half of paperwork, to enter the calls for the day." Although Leordeanu was a well-regarded employee, she had received an unfavorable report for her administrative "paperwork" tasks. Thus, she testified that she had a "serious deadline" that night because she was going out of town

and needed to put her paperwork in the mail the next day so it would be received by her district manager on time: "I had to put that stuff in the mail to him that Friday. It had to be done." She recognized her performance on administrative tasks was "not where it should be," and that she had a deadline she had to meet.

After dinner, Leordeanu traveled from South Austin via Loop 360, a major artery, intending to exit at F.M. 2222. The route to the storage unit was also in the direction of her home. Before she reached the storage unit, and while she was still on Loop 360, Leordeanu suffered serious injuries in a car accident.

If facts raise the dual purpose doctrine for injury incurred during travel, the jury—as it was here—must be instructed as to the dual purpose rule.[2] *Wausau Underwriters*, 807 S.W.2d at 422–23; *Texas Workers' Comp. Ins. Fund v. Bridwell*, No. 14–02–00643–CV, 2003 WL 22510858 at *3, 2003 Tex.App. LEXIS 9443 at *6–7 (Tex.App.-Houston [14th Dist.] Nov. 6, 2003, no pet.) (mem. op., not designated for publication); *Argonaut Sw. Ins. Co. v. Brewer*, No. 09–93–005–CV, 1994 WL 312909 at *4 (Tex.App.-Beaumont June 30, 1994, writ denied) (mem. op., not designated for publication). As the trial judge correctly recognized, the determination of whether the evidence adduced at trial establishes that an employee was in the course and scope of employment is a fact question for the jury. The jury answered this fact question in a general verdict, finding that Leordeanu was in the course and scope of her employment at the time she was injured. American Protection did not challenge the instruction, and the instruction is consistent with this Court's

analyses of the dual purpose rule as it applies in the context of the course and scope of employment. Nor is it disputed that the court's instruction to the jury provided an accurate statement of the law. If American Protection had desired findings other than the general verdict, it could have posed separate questions to the jury. *See* Tex. R. Civ. P. 278. It did not. The disputed question was whether the plaintiff was acting within the course and scope of employment; this was a question for the jury to which the parties sought a general verdict.

Just as driving in a company car festooned with a company logo does not necessarily bring the employee within coverage of the Act, neither does the fact that the employee will eventually end up at home at the close of day exclude him from coverage. If an employee is injured while running an errand for the employer either on the way to work or on the way home from work, the controlling issue remains whether the employee was in the course and scope of his employment. One court reasoned that the inquiry requires the fact finder to determine during which segment of the trip the injury occurred—the segment between the errand and work or the segment between the errand and home. *St. Paul Fire & Marine Ins. Co. v. Confer*, 956 S.W.2d 825, 830 (Tex.App.-San Antonio 1997, pet. denied). In its well-reasoned analysis of a case similar to this one, the San Antonio court of appeals upheld a jury verdict that an employee was in the course and scope of his employment when he had an accident that occurred while he was driving to a store for office supplies after which he would have driven home. *Id.* As in this case, in *Confer*, the route home

---

2. Where evidence of dual purposes existed and the court did not include a charge, it was reversed. *See, e.g., Wausau Underwriters Ins. Co. v. Potter*, 807 S.W.2d 419, 422–23 (Tex.App.-Beaumont 1991, writ denied). Despite the fact that this case may not raise the issue of dual purpose travel and require such a charge, the cautious trial court gave one.

coincided with the route to the business errand. The majority does not distinguish *Confer*, but finds that it "departs" from the statute.

The court in *Confer* parsed a difficult statute concluding that the "controlling issue should be whether the employee is traveling on behalf of his employer *at the time* of the accident, not on what road he happens to be traveling." *Id.* at 830. The court reasoned that the fact that the office supply store happened to be along the same route as the employee's route home "should be of little consequence." *Id.* at 829. Both Confer and Leordeanu were traveling on major highway arteries—Confer on Interstate Highway 35 and Leordeanu on Loop 360. As the *Confer* court correctly asked: "Why should the result be any different if [the office supply company] had been located somewhere off of Interstate 35, forcing Dr. Confer to travel away from his regular route?" There is no language in the statute suggesting that the legislature intended such a random factor to inform its statutory scheme. Nor can one assume that the fact that Leordeanu organized her sales travels and chores to eventually end up at home just off of Loop 360 would automatically exclude her from coverage. But this is not even a *Confer* case. This is a traveling sales representative case.

By the majority's reasoning, Leordeanu was on a dual purpose trip that would exclude her from coverage when she left the doctor's office in Bastrop for the business dinner in Austin. Even though she was traveling from one business errand to another, and was clearly in the course and scope of employment, she was also traveling the same route that she would have to traverse to return to her home in Austin later that night even in the absence of a business purpose. Under the majority's erroneous application of the statute, this trip would be no different than her trip from the restaurant to the storage unit. Both the storage unit and restaurant were mere stops on a trip that would ultimately take her home. The issue is not whether she would end up at home at the end of her workday—most workers do. The issue is whether she was in the course and scope of her employment at the time of her accident.

The majority's reading makes it impossible for the statute to achieve its legislative purpose by extirpating its provisions for persons without a fixed workplace. The coming and going rule originates from the proposition that an injury occurring while using the public streets or highways in commuting to and from work is non-compensable because the employee is not exposed to any risk of the workplace that any other driver is not exposed to. A different situation is presented when an injury occurs as the result of travel pursuant to express or implied requirements of an employment contract. *Jecker v. Western Alliance Ins. Co.*, 369 S.W.2d 776, 779 (Tex.1963), *overruled on other grounds by McKelvy v. Barber*, 381 S.W.2d 59 (Tex. 1964); *see also Lowry*, 231 S.W. at 822–23. The rationale for the exception is that since it is the employment that exposes the employee to the risks of the public streets and highways, his injuries arise from the employment. *Jecker*, 369 S.W.2d. at 778; *see also Lowry*, 231 S.W. at 822–23. Further, the statutory definition of course and scope of employment contemplates coverage for activities conducted on the work premises and "at other locations." Tex. Lab. Code Ann. § 401.011(12). When travel upon public roadways is an integral or necessary part of one's employment, and it is as much a part of one's work as the actual arrival at a workplace—or if there is no actual workplace other than a home office—travel is an element of the employment, and courts have held that

such traveling is in the course and scope of employment. *See, e.g., Jecker,* 369 S.W.2d at 776 (holding that salesman's death was compensable when he was in accident on return trip from a service call); *Employers Cas. Co. v. Hutchinson,* 814 S.W.2d 539 (Tex.App.-Austin 1991, no writ) (holding that dual purpose rule did not bar recovery for customer service employee killed in an accident on trip from family reunion to customer's home); *Lowry,* 231 S.W. at 823 (holding that salesman's death was compensable when he was in auto accident while returning home from business trip).

It would defeat the legislative scheme to simply label all travel in the direction of home as "inherently personal" and automatically exclude it from coverage under the dual purpose rule. Surely, a salesperson who organized his stops from the furthest stop to the closest one to home and began his work with the stop at the longest distance from home cannot be said to be excluded by the dual purpose rule as he works his way home.

This is not a typical commuter case. Leordeanu was a traveling sales representative who worked out of her car, storage unit, and home office. Unlike the normal commuter who travels to and from a set place, or places, of employment, she was directed in her employment to travel from place to place within her designated territory on a daily basis. On the day of her injury she traveled to a health care provider's office in Austin, to offices in Bastrop, back to a restaurant in Austin, and was then injured in an accident as she drove towards her employer's storage unit after 9 p.m.

Leordeanu is not like a normal commuter, and was not injured as a consequence of a risk to which all traveling persons are exposed. The risk to Leordeanu was inherent in the employment itself. *See Lowry,* 231 S.W. at 823 (holding that death of

salesman in auto accident while returning home from business trip was within course and scope of employment because salesman, although paid on commissions, was employee, not independent contractor); *see also Shelton,* 389 S.W.2d at 292–93 (injury arises out of the work or business of employer when it results from risk or hazard which is necessarily inherent in the conduct of such work or business). Her accident arose out of the traveling nature of her employment. *See Shelton,* 389 S.W.2d at 292–93; *Lowry,* 231 S.W. at 823. It arose from an activity that "originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." *See* Tex. Lab. Code Ann. § 401.011(12). More than sufficient evidence was provided at trial for the jury to find that, at the time of her accident, Leordeanu was traveling from a business dinner to a storage unit, and even then to her home office, for the sole purpose of furthering her employer's affairs.

The jury's finding is in accord with *Evans* and other cases relied on by the majority. In *Evans,* the Texas Supreme Court held that an employee's death was not compensable when he was killed in an accident on his way to a pre-work safety meeting because he had not yet "begun work" and coverage was therefore barred under the coming and going rule. 790 S.W.2d at 305. The court stated, however, that the death would have been compensable if the accident had occurred between the safety meeting and the work site. *Id.*

In *Tramel,* the Fort Worth court of appeals held that an injury was not compensable when the employee was injured during her regular trip to the bank on behalf of her employer before work. 830 S.W.2d at 757. The accident occurred on a

point in the trip that she would have traveled on her way from home to either the bank or work. *Id.* Unlike the employees in both of these cases, Leordeanu was not merely driving to work at the time of her injury but was in fact in the course and scope of her employment as a traveling pharmaceutical sales representative. *See Orgon,* 721 S.W.2d at 575; *Lowry,* 231 S.W. at 823. Once she began her work for the day, Leordeanu's situation became analogous to the *Evans* court's hypothetical in which the employee injury was compensable because it occurred during travel between the pre-work safety meeting and the work site. This case is even more compelling as Leordeanu operated out of her home office and storage facility and drove a company car.

The facts of the present case are more like those in *Meyer v. Western Fire Ins. Co.,* 425 S.W.2d 628, 629 (Tex.1968), than *Evans* or *Tramel.* In *Meyer,* the Texas Supreme Court held that an employee's accident on the way to work was in the course and scope of employment when the employee had taken work-related phone calls from home before departing. *Id.* at 629. The employee was a service supervisor who worked partly at home, partly at his employer's office, and partly in making service calls to homes built by his employer. *Id.* He drove his own vehicle and had discretion as to when he made his service calls. He was not required to stop by the office at any given time, but tried to stop by once a day to pick up messages. *Id.* The court framed the question whether he was already working at the time of the accident or whether he was merely on his way to work. *Id.* at 628. In determining whether his accident was in the course and scope of employment, the court reflected on the legislature's adoption of the "coming and going" and "dual purpose" rules:

[T]he Legislature surely did not intend to provide that an employee whose employment requires him to travel at his own expense in his own automobile on streets and highways, either constantly or intermittently, should be denied compensation if accidently injured while thus exposed to risks growing out of his employment. Any such holding would be wholly unjust to salesmen, servicemen, repairmen, deliverymen, and a host of others who may be required to use their own automobiles in their work, and would be a strict rather than a liberal interpretation of the Workmen's Compensation Act.

*Id.* at 630 (quoting *Jecker,* 369 S.W.2d at 779). The court held that there was evidence that the employee was impliedly directed in his employment to travel to the office on the day of the accident and that the dual purpose rule did not bar him from recovering benefits. *Id.* at 630–31.

In a similar manner to the employee in *Meyer,* Leordeanu worked partly in making sales calls, partly out of her storage facility, and partly at home. She had discretion as to when she would make her calls, and as the employee in *Meyer* did, she would visit the storage unit on a regular basis in the course of her duties. Unlike the employee in *Meyer,* Leordeanu was furnished with a company car she used to further her employer's affairs-making the case that her accident was in the course and scope of employment even more compelling. Leordeanu is precisely the kind of employee that the *Jecker* and *Meyer* courts warned would be unjustly denied recovery under a "strict rather than a liberal interpretation" of the statute. *See id.*

The majority is correct that the statute is semantically challenging. But the trial

court gave a correct statement of the law in its instruction and identified the ultimate destination for the jury's journey. The jury accomplished the task it was asked to do. Because the evidence in this case, assessed under the appropriate standard, was clearly sufficient to support the jury's finding of course and scope of employment, I respectfully dissent.

Before Chief Justice JONES, Justices PATTERSON, PURYEAR, PEMBERTON, WALDROP and HENSON.

## ORDER

PER CURIAM.

Liana Leordeanu has filed a motion for rehearing en banc. The motion is denied.

It is ordered February 13, 2009.

Dissenting Opinion by Justice HENSON.

DIANE M. HENSON, Justice, dissenting.

Because the majority opinion in this case deviates from this Court's precedent regarding the "continuous coverage principle," I believe that en banc review is warranted. *See Aetna Cas. & Sur. Co. v. Orgon,* 721 S.W.2d 572, 575 (Tex.App.-Austin 1986, writ ref'd n.r.e.) (holding that employee whose work entails travel remains within course of employment continuously during trip). As discussed in Justice Patterson's substituted dissenting opinion, Leordeanu was a traveling salesperson without a fixed place of employment, and was therefore subject to the "continuous coverage principle." *See generally Orgon,* 721 S.W.2d at 575; *Texas Employers Ins. Ass'n v. Cobb,* 118 S.W.2d 375, 379 (Tex.Civ.App.-El Paso 1938, writ ref'd) (holding that because traveling employee had "the duty to go from place to place at the will of his employer" in the performance of his employment, injury that occurred during overnight stay on business trip was "proper subject for compensation under our Workmen's Compensation Act."); 99 C.J.S. *Workers' Compensation* § 428 (2000) (collecting cases).[1] Because I believe that the continuous coverage principle applies in the present case, I adopt the reasoning of Justice Patterson's dissent and respectfully dissent from the denial of en banc consideration.

---

1. In *Orgon,* this Court cited a number of cases from other jurisdictions to illustrate that the " 'continuous coverage principle' is the prevailing view throughout the United States." *Aetna Cas. & Sur. Co. v. Orgon,* 721 S.W.2d 572, 575 (Tex.App.-Austin 1986, writ ref'd n.r.e.). This citation includes two cases involving facts similar to the present case, in which a traveling employee was injured while returning home from a business trip. *See Baldridge v. Inter-River Drainage Dist. of Mo.,* 645 S.W.2d 139, 140 (Mo.App.1982) (holding that coming-and-going rule does not apply to "employees whose work entails travel away from the employer's premises"); *McGee v. Panhandle Tech. Systems, Inc.,* 223 Neb. 56, 387 N.W.2d 709, 713 (1986) (employee was acting in scope of employment when injured during drive home from trip taken for purpose of studying marketing techniques of similar businesses).